# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
## CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | No. 09-CR-3013 |
| vs. | **ORDER** |
| KEVIN DONDI CRAIG, | |
| Defendant. | |

_____

## *I. INTRODUCTION*

The matter before the court is Defendant Kevin Dondi Craig's Objections ("Objections") (docket no. 43) to United States Magistrate Judge Jon S. Scoles's Report and Recommendation ("Report and Recommendation") (docket no. 36). Judge Scoles recommends that the undersigned grant in part and deny in part Defendant's Motion to Suppress ("Motion") (docket no. 16).

## *II. RELEVANT PRIOR PROCEEDINGS*

On April 7, 2009, a grand jury returned a one-count Indictment (docket no. 2), which charged Defendant with being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). The indictment also contains a forfeiture provision. On April 10, 2009, Defendant pleaded not guilty (docket no. 7).

On May 8, 2009, Defendant filed the Motion. On May 15, 2009, the government filed a Resistance (docket no. 23). On May 18, 2009, Judge Scoles held a hearing ("Hearing") on the Motion (docket no. 26). Attorney JoAnne Lilledahl represented Defendant, who was personally present. Assistant United States Attorney Rebecca Goodgame Ebinger represented the government. On May 19, 2009, Defendant filed a

Notice of his intent to enter a conditional guilty plea (docket no. 27). On May 20, 2009, Judge Scoles held a hearing (docket no. 29) and recommended that the court accept Defendant's guilty plea (docket no. 31). On June 4, 2009, the court accepted Defendant's guilty plea (docket no. 34). On June 10, 2009, Judge Scoles issued the Report and Recommendation concerning Defendant's Motion to Suppress. On June 24 2009, Defendant filed his Objections. The Objections and Report and Recommendation are fully submitted and ready for decision.

### III. STANDARD OF REVIEW

When a party files a timely objection to a magistrate judge's report and recommendation, "[a] judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 29 U.S.C. § 636(b)(1); *United States v. Lothridge*, 324 F.3d 599, 600 (8th Cir. 2003); *see also* Fed. R. Crim. P. 59(b)(3) (stating "[t]he district judge must consider de novo any objection to the magistrate judge's recommendation"). "A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1); *see also* Fed R. Civ. P. 59(b)(3) (stating a district judge "may accept, reject, or modify the recommendation, receive further evidence, or resubmit the matter to the magistrate judge with instructions"). It is reversible error for a district court to fail to engage in a de novo review of a magistrate judge's report when such review is required. *Lothridge*, 324 F.3d at 600. Accordingly, the court reviews the Report and Recommendation de novo.

### IV. ANALYSIS

#### A. Findings of Fact

Defendant raises one objection to Judge Scoles's findings of fact. Defendant objects to Judge Scoles's finding that Deputy Kiley Winterberg delivered credible testimony at the

Hearing. Objections at 1-2. After a de novo review of the record, the court overrules Defendant's objection and adopts Judge Scoles's findings of fact in their entirety.

Defendant specifically takes issue with the credibility of Deputy Winterberg's testimony that he would have sought a search warrant had no one been present at Defendant's residence. *Id.* The events of the evening in question support Deputy Winterberg's assertion that he would have sought a search warrant.

Deputy Winterberg testified that he received a dispatch at approximately 10:24 p.m. on November 24, 2008. Transcript ("Tr.") (docket no. 40), at 6. The dispatch indicated that a 911 caller had seen a young woman trying to flag down oncoming traffic. Deputy Winterberg testified that he began traveling toward the area where the caller saw the young woman. *Id.* He called the Chief of Police of Greene, Iowa ("Chief of Police") to assist him in his search. *Id.* The Chief of Police and Deputy Winterberg were unable to locate the young woman but soon received a call indicating that a young woman had arrived at a house in the area with an infant child and that the young woman was upset and crying. *Id.* at 6-7. Deputy Winterberg arrived at the house, where he found the young woman and the baby, who was wrapped in a blanket. *Id.* at 7-8.

Deputy Winterberg then took the young woman's statement. The statement redacts the woman's name to "C.W." *See* Government Exhibit 1, *passim*. C.W. told Deputy Winterberg that her stepfather had been drinking with his friends and became agitated. *Id.* She told Deputy Winterberg that her stepfather retrieved a gun from a bedroom and fired a shot through the front door. *Id.* According to her statement, C.W. then went into a bedroom with her child, where she was undisturbed for a short period of time. *Id.* Shortly thereafter, her stepfather came into the room and began to scream and pull her hair. *Id.* She then decided to flee the residence on foot with her child. According to Deputy Winterberg's testimony, C.W. also told him that her stepfather was a felon and that he had sexually assaulted her in the past. Tr. at 10. After taking C.W.'s statement, Deputy

Winterberg checked Defendant's criminal history and confirmed that Defendant is a felon and a registered sex offender. Tr. at 12.

Deputy Winterberg then testified that he called Sheriff Jason Johnson to discuss how to proceed. Tr. at 12-13. Deputy Winterberg and Sheriff Johnson agreed that Deputy Winterberg, along with two other deputies and the Chief of Police, would go to Defendant's residence. *Id.* at 13. They further agreed that if no one answered the door, Deputy Winterberg would seek a search warrant. *Id.*

In light of the events of the evening, the court finds Deputy Winterberg's testimony credible. Absent the warrantless entry into Defendant's residence, Deputy Winterberg possessed evidence that a crime had occurred. He took C.W.'s statement, which she gave while shaken and upset. In addition, Deputy Winterberg's criminal history check on Defendant corroborated C.W.'s statement that Defendant is a felon. Furthermore, Deputy Winterberg took part in a conversation with Sheriff Johnson that concerned the best course of action. Rather than immediately proceeding to Defendant's residence, Deputy Winterberg and Sheriff Johnson carefully planned how to best confront the defendant. In light of the above facts, the court finds credible Deputy Winterberg's testimony that he would have sought a search warrant had no one answered the door at Defendant's residence.

With respect to Deputy Winterberg's testimony, the court overrules Defendant's objection and adopts the facts as presented in Part IV of the Report and Recommendation in their entirety.

### *B. Conclusions of Law*

Defendant raises two objections to Judge Scoles's conclusions of law. Upon de novo review of the record in its entirety, the court shall overrule them. For the reasons set forth below, the court adopts Judge Scoles's conclusions of law in their entirety.

### 1. Application of the Independent Source Doctrine to Seizure of Physical Evidence

Defendant first objects to Judge Scoles's conclusion that the evidence seized from Defendant's residence pursuant to a validly executed search warrant is admissible under the independent source doctrine. Defendant asserts that the independent source doctrine does not apply to the facts of this case. Specifically, Defendant maintains that, absent the evidence acquired through the initial warrantless entry into Defendant's residence, Deputy Winterberg would not have sought a search warrant, and that, absent the tainted information included in the search warrant application, the warrant would have lacked probable cause. Objections at 1.

The exclusionary rule prohibits admission of illegally obtained evidence. *Weeks v. United States*, 232 U.S. 383, 398 (1914). However, "[t]he independent source doctrine allows admission of evidence that has been discovered by means wholly independent of any constitutional violation." *Nix v. Williams*, 467 U.S. 431, 443 (1984).

> "The independent source doctrine teaches us that the interest of society in deterring unlawful police conduct and the public interest in having juries receive all probative evidence of a crime are properly balanced by putting the police in the same, not a worse, position that they would have been in if no police error or misconduct had occurred."

*Id.* To admit evidence pursuant to the independent source doctrine, the government must satisfy two prongs: first, that "the police [would] have applied for the warrant had they not acquired the tainted information," and second, that "the application affidavits support probable cause after the tainted information has been redacted from them." *United States v. Swope*, 543 F.3d 609, 614 (8th Cir. 2008).

The government has satisfied the first prong of the *Swope* test; Deputy Winterberg would have applied for a warrant had he not acquired the tainted information. The court has adopted the facts as presented in Part IV of the Report and Recommendation. These

facts include Deputy Winterberg's credible testimony that he would have sought a search warrant had no one answered the door at Defendant's residence.

The government has satisfied the second prong of the *Swope* test; absent the tainted information, the search warrant application supports probable cause. "To support probable cause, the redacted application 'must describe circumstances showing, that based on practical experience and common sense, there is a fair probability that contraband or similar evidence will be found in the targeted place.'" *Swope*, 542 F.3d at 616 (quoting *United States v. Nguyen*, 526 F.3d 1129, 1133 (8th Cir. 2003)). When the tainted information, that is the officer's observations of drug paraphernalia, a casing and bullets and Defendant's statements, is redacted, the search warrant application still supports probable cause. The search warrant application contains C.W.'s statement detailing: Defendant's assault on her, Defendant's use of alcohol that evening and Defendant's action of firing a gun through the screen door of his residence. The surrounding circumstances support the credibility of C.W.'s statement. After being assaulted, C.W. and her small child walked away from Defendant's residence even though it was a cold November Iowa night. Deputy Winterberg took her statement at a neighboring house where she fled to escape Defendant. According to Deputy Winterberg's testimony, she was visibly upset and shaken while speaking with him. In addition to C.W.'s statement, the search warrant application contains information concerning Deputy Winterberg's criminal history check of Defendant. In light of the above evidence, the court agrees with Judge Scoles's conclusion that the redacted search warrant application supports probable cause.

The court agrees with Judge Scoles that the government has satisfied both prongs of the *Swope* test, and thus the independent source doctrine renders the physical evidence seized at Defendant's residence admissible. Accordingly, the court overrules Defendant's objection and adopts Part V.B of the Report and Recommendation.

### 2. *Application of Attenuation Doctrine to Defendant's Statements*

Defendant next objects to Judge Scoles's finding that Defendant's November 26, 2008 statements are admissible. Defendant asserts that, had officers not made the warrantless entry into his residence, he would not have made statements at the sheriff's office the following day. Objections at 8.

The "fruit of the poisonous tree doctrine" prohibits admission of evidence obtained by illegal actions of law enforcement officers. *Wong Sun v. United States*, 371 U.S. 471, 487-88 (1963). However, evidence is admissible when the connection between the law enforcement officer's illegal activity and the evidence at issue "[has] become so attenuated as to dissipate the taint." *Nardone v. United States*, 308 U.S. 338, 341 (1939). To determine whether the connection has become attenuated, the court does not "simply inquire whether the evidence would have been discovered 'but for' the illegal conduct." *United States v. Watson*, 950 F.2d 505, 507 (8th Cir. 1991). "Rather, the more apt question in such a case is 'whether . . . the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint.'" *Id.* (quoting *Wong Sun*, 371 U.S. at 487-88).

Defendant's statements at the sheriff's office are sufficiently attenuated from the warrantless entry into his residence. Defendant's objection to Judge Scoles's finding on this point asks the court to engage in a "but for" analysis. Engaging in such an analysis would cause the court to misapply the law. *Watson*, 950 F.2d at 507. Defendant voluntarily went to the sheriff's office the day after his arrest, and he initiated conversation with Sheriff Johnson in order to tell his side of the story. In light of this, the court agrees with Judge Scoles's conclusion that Defendant's November 26, 2008 statements were sufficiently attenuated from law enforcement's warrantless entry into his residence.

Accordingly, the court overrules Defendant's objection and adopts Part V.C.2 of the Report and Recommendation.

## V. CONCLUSION

In light of the foregoing analysis, the court **ORDERS:**

(1) The Objections (docket no. 43) are **OVERRULED**;

(2) The Report and Recommendation(docket no. 36) is **ADOPTED; and**

(3) The Motion (docket no. 16) is **DENIED.**

**IT IS SO ORDERED**.

**DATED** this 13th day of August, 2009.

LINDA R. READE
CHIEF JUDGE, U.S. DISTRICT COURT
NORTHERN DISTRICT OF IOWA